UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY S. DELP,

    Plaintiff,

v.                                                                    Case No. 1:13-cv-840
                                                                         Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on June 7, 1964 (AR 237).[1] For some years, he had been deemed disabled. As Administrative Law Judge (ALJ) James F. Prothro explained:

> By way of jurisdictional history, the claimant was found disabled as of March 9, 2002 in a decision dated November 7, 2002. On April 13, 2006, it was determined that the claimant was no longer disabled as of April 1, 2006. This determination was ultimately upheld upon appeal in a decision dated February 1, 2010 by Administrative Law Judge William E. Decker (Exhibits C3A; C4A).

(AR 19).

In the present case, plaintiff alleged a disability onset date of January 29, 2009 (AR 237).

---

[1] Citations to the administrative record will be referenced as (AR "page #").

The record reflects that he completed the 12th grade, had additional job training in wood finishing school, and had previous employment as a finisher in a furniture factory (AR 230-31). Plaintiff identified his disabling conditions as a congestive heart failure (AR 229). ALJ Prothro reviewed plaintiff's claim *de novo* and entered a decision denying benefits on February 24, 2012 (AR 19-27). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

3

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, ALJ Prothro found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 29, 2009 and that he met the insured status requirements under the Act through June 30, 2011 (AR 21). At the second step, the ALJ found that plaintiff had a severe impairments of: cor-pulmonale secondary to chronic pulmonary vascular hypertension; cardiomyopathies; and borderline intellectual functioning (AR 21). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 22). Specifically, plaintiff did not meet Listings 3.09A (cor-pulmonale secondary to chronic pulmonary vascular hypertension), 4.02 (chronic heart failure), or 12.02 (organic mental disorders) (AR 22).

ALJ Prothro decided at the fourth step that:

[T]hat the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He has been able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl. In addition, the claimant can do simple,

>routine tasks and can work where he is not required to read, where he does not work with the general public, and where the work is low stress.

(AR 22-23). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 26).

At the fifth step, the ALJ determined that plaintiff could perform a range of unskilled light work in the national economy (AR 26-27). The work included 45,000 light, unskilled manufacturing jobs (e.g., assembly, inspection, fabrication and machine attendant) in the State of Michigan (AR 27). Accordingly, ALJ Prothro determined that plaintiff was not under a disability, as defined in the Social Security Act, from January 29, 2009 (the alleged onset date) through February 24, 2012 (the date of the decision) (AR 27).

### III. ANALYSIS

Plaintiff raised three issues on appeal:

**A. The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physician.**

Plaintiff contends that ALJ Prothro did not properly consider the opinions of plaintiff's primary care physician, David C. Tatten, D.O. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the

5

claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

While plaintiff's argument does not cite any particular opinion expressed by Dr. Tatten, he is apparently referring to a medical examination report that the doctor prepared for the Michigan Department of Human Services dated December 23, 2010 (AR 383-84).[2] In this report, Dr. Tatten opined that plaintiff's general condition was normal except that he was "easily fatigued from cardiomypathy" (AR 383). In addition, doctor noted that plaintiff suffered from exertion

---

[2] The Court notes that plaintiff briefs refer to this document as appearing on pages 363-64 of the administrative record.

6

dyspnea and intermittent depression (AR 363). The doctor felt that plaintiff was stable but his physical limitations precluded him from lifting *any* weight; that he could not perform any repetitive action with his hands/arms (e.g., grasp, reach, push, pull, or engage in "fine manipulation"); and that he could not operate any foot/leg controls (AR 384). In addition, plaintiff was capable of sitting for 6 hours in an 8-hour workday (AR 364). Dr. Tatten found plaintiff had no mental limitations (AR 364).

ALJ Prothro addressed Dr. Tatten's report as follows:

> In assessing the claimant's residual functional capacity, the undersigned has considered a Medical Examination Report completed by the claimant's physician noted, among other minor findings, that the claimant was easily fatigued due to cardiomyopathy and experienced exertional dyspnea. And while he suggested that the claimant could only sit less than 6 hours in an 8-hour workday and never lift, he did not indicate any limitations regarding the claimant's ability to stand/walk. Notwithstanding, his clinical impression was that the claimants' condition was stable and that the claimant had no mental limitations (Exhibit C7F/10). Nevertheless, this opinion appears to be incomplete and not an accurate assessment of the claimant's abilities, as such it is afford [sic] little weight. In that regard, results of a physical consultative examination, dated June 3, 2010, revealed that the claimant had no difficulty ambulating and only minor respiratory findings, specifically some minor left lobe crackling (Exhibit C3F). Further, the claimant testified that he mows the law, makes dinner for his mother, and spends most of his time watching television, which contrasts with the limitations issued by the claimant's physician.

(AR 25).

After reviewing the record, the Court concludes that ALJ Prothro did not err in reviewing Dr. Tatten's opinion. The ALJ noted that the opinion was incomplete and inconsistent with plaintiff's activities. The ALJ's decision noted that a third-party function report stated that plaintiff "is able to tend to his personal needs, care for his dog, prepare simple meals, perform some household chores, shop for groceries, drive a car, and lift up to 15 pounds (Exhibit C4E)" (AR 25).

These are inconsistent with the extreme limitations given by Dr. Tatten (e.g., plaintiff can never lift any weight or use foot/leg controls).

"An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters*, 127 F.3d at 532. While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing the types of work identified by the ALJ. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability).

This claim of error will be denied.

**B.     The ALJ did not have substantial evidence to support his finding that plaintiff was not fully credible.**

Plaintiff contends that ALJ Prothro failed to properly address his credibility. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*,

471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

First, plaintiff contends that the ALJ improperly rejected plaintiff's claim that he has a medication side effect of frequent urination (AR 26). Plaintiff contends that this is the result of a prescribed diuretic. While plaintiff states that frequent urination is a known side of this medication, he does not identify any discussion of the diuretic in the administrative record. The Court's review "is limited to an examination of the record only." *Brainard*, 889 F.2d at 681. Plaintiff's presentation of evidence outside of the record is not a proper subject for review.

Second, plaintiff contends that the ALJ used meaningless "boilerplate language" to evaluate his credibility, when he stated that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. As set forth above, the medical findings suggest that the claimant's symptoms are

relatively stable. Further, while the claimant alleged side effects related to his medication, such as frequent urination, fatigue and weight gain, they are not well supported by the record. Thus, more weight is afforded to the objective findings than the claimant's allegations.

(AR 25-26).

Plaintiff relies on the Seventh Circuit decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), which criticized the Agency's use of this type of language in ALJ decisions:

> One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above" — above is just the foreshadowed conclusion of that later assessment. A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be. In this regard we note the tension between the "template" and SSR 96–7p(4), www. ssa. gov/ OP_ Home/ rulings/ di/ 01/ SSR 96– 07– di– 01. html (visited Jan. 4, 2012), which states that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." The applicant's credibility thus cannot be ignored in determining her ability to work (her residual functional capacity, in SSA-speak).

*Bjornson*, 671 F.3d at 645-46. The court also opined that "[t]he Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'" *Id.* at 646.

Notwithstanding the Seventh Circuit's criticism of this "opaque boilerplate," *id.* at 644, that Court did not summarily reverse the ALJ's decision for using the boilerplate, *see id.* at 644-49. Rather, the Court considered the ALJ's specific reasons for rejecting the ALJ's credibility determination. *See id.* at 646 ("[t]he administrative law judge based his doubts about Bjornson's

10

credibility on his assessment of the medical reports or testimony of the three doctors whom we've mentioned"). Thus, the ALJ's use of the language in this case is not, in and of itself, grounds for reversal because the ALJ also gave specific reasons for rejecting plaintiff's credibility. In addition to the alleged side effects of medication (AR 26, the ALJ recounted inconsistencies in plaintiff's testimony "that he mows the law, makes dinner for his mother, and spends most of his time watching television which contrasts with the limitations issued by [plaintiff's] physician" (AR 25), that plaintiff reported that he was golfing "a physical activity which no doubt is suggestive of an ability to perform light work" (AR 24-25), and a third-party function report which indicated that plaintiff "is able to tend to his personal needs, care for his dog, prepare simple meals, perform some household chores, shop for groceries, drive a car, and lift up to 15 pounds" (AR 25). Accordingly, this claim of error is denied.

        **C.    The ALJ committed reversible error by failing to follow the vocational expert's answers to accurate hypothetical questions.**

Plaintiff contends that ALJ Prothro failed to pose an accurate hypothetical question to the vocational expert (VE). An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *Blacha v. Secretary*

*of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994).

Here, the ALJ posed a hypothetical question to the VE which included limitations as set forth in plaintiff's RFC (AR 61-63). In response to the question, the VE testified that such a person could perform 45,000 light, unskilled manufacturing jobs (AR 61-63). Plaintiff's counsel posed a hypothetical question to the VE which assumed an additional restriction of having to sleep one to two hours nearly every day between the hours of 8:00 a.m. and 5:00 p.m. (AR 65). The VE testified that such a restriction would be work preclusive (AR 65). In response to another hypothetical question which assumed an additional restriction of frequent bathroom breaks due to the use of a diuretic, the VE testified that such frequent breaks would not have an adverse impact unless the person had an employer or supervisor who noticed that they were gone (AR 65-66). While plaintiff's counsel was able to identify at least one work preclusive limitation (i.e., the need to sleep during working hours), the ALJ did not accept this latter limitation as credible. Accordingly, this claim of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: September 24, 2014             /s/ Hugh W. Brenneman, Jr.
                                                       HUGH W. BRENNEMAN, JR.
                                                       United States Magistrate Judge